Judge Underwood,
delivered the opinion of the court.
In September, 1819, Winn conveyed one hundred and five acres of land to M. Taul, by-deed, with general warranty. The land was sold at the price of $45 per acre. In June, 1823, Winn obtained two judgments against M. Taul and his surety, Benjamin J. Taul, each for the sum of,$1,2il 66 cents, on notes executed for the purchase money in part. M *438 Taul and James P. Bullock, in July, 1823, entered into-recognizances, in the clerk’s office, for the payment of the amount of said judgments within two years. Benjamin J. Taul was no party to these recognizances. Executions having issued on the recognizances against M. Taul and Bullock, a bill was filed in the names of M. Taul and Benjamin J. Taul, as joint complainants, in substance, setting forth the foregoing facts, and referring to the whole proceedings at law as a part of the bill, and praying for an 'injunction, upon the ground, that Mrs. McCrary was entitled to dower in the said one hundred and five acres of land, and had asserted her claim by suit against M. Taul, which was' then pending, and that Winn was a non-resident, so that no recourse could be had against hi.m, in this state, upon' the warranty contained in the deed, in case Mrs. McCrary’s claim should prove successful. An injunct lion was awarded.
Winn answered, by denying’that Mrs. McCrary’s husband was ever legally or equitably seized in law, or in deed;'during the existence of the coverture, and, therefore, he controverts her right of dower in toto; but, in order to buy his peace and to quiet the useless fears of Taul, he alleges that he had pure! ased her Ínteres!, if any she had, and caused her to di-miss her suit against Taul. He exhibits with his answer, her deed of relinquishment, and a copy of the order dismissing her suit against Taul.
The case stood upon the hill and answer, until June, 1826, when M. Taul obtained leave to file a supplement1 to his original bill, in which he charges, thatin ihe preceding November he had entered into a contract with Samuel Tribble, “acting as the agent and attorney in fact for said Winn, by w: ¡ich he sold to Tribble, as agent and attorney aforesaid, the lands which were the consideration of the monies due to Winn, and about thirty five acres adjoining the same, for ‡2,841 Ta cents,and it was thereupon agí eed between the parties, that your orator (meaning M. Taul,) was to becred ted therefor on the judgments rendered agaiusthim in Winn’s favor, and that the original bill was to be dismissed, by agre*, ment, without costs or damages.” Retiene-targes, that Winn'was endeavoring to have the injune don dissolved with damages, &c. Wherefore, he prayed that the original *439 suit might be disposed of according to the contract ma ie with Tribble, and that he, as well as Winn, might be made defendants, &c. .
The contract between Taul and Tribble, bearing date 2-)lh November, 1825, signed by the latter “as agent and attorney in fact for J. Winn,” is exhibited. In its commencement it is a bond from Taul, to Tribble, without the addition of “ ag rU, for 'the payment of the penal sum of .^‘0,000, to which thee is, in substance, this condition, “that, whereas, Taul had, for the sum of $>l,42j 87-i cents, o he paid on the 1st of March next, and'of the like sum to be paid in twelve months, s Id to said Tribble one hundred and five acres of land conveyed to Ta.il by J. Winn, forty- acres conveyed to Taul by D. Winn, and twelve acres three roods and twenty poles purchased of J. Winn, for which said Taulheldiiis bond. If, therefore, said Taul shall, on the consideration aforesaid being paid, make, or cause to be made,to said Tribble, a title i n feesimple, with a clause of general warranty, then the above ohl gation to be void, &c.” The c mlraoi, which is signed by b >lh Tribble and Taul, the former signing as already sta.ed, then concludes ihus; “.byway of expl.ma'ion of the condition aforesaid, it is understood lhat the afo:esaid several tracts of land have been sold to said Tribble, the. agent and aitorney in fact of Jumes Winn; that then said Tribble, as agent and attorney aforesaid, is to give said Taul credit, on the judgments obtained by said Winn j for the amount for which said land was sold, and the suit now dep ending between said Taul and Winn, in the Carke circuit court, is to he dismissed. In consequence of the latter part of the agreement, it is signed by both parties.”
Winn answered the supplemental bill, denying all personal k iowledge of the contract and transactions between Taul and Tribble,-as he was not at the time in Kentucky, and requires proof of every allegation not admitted by Tribble, io whose answer he refers, lie denies that he ever authorized Tribble to give up the costs and damages to which he might he entitled, and -says he does not know whether Tribble made any ,agr ;ement to that effect. He claims costs and damages upon the dismissal of the suit in chancery.
*440 Tribble answered the supplement, and admits the contract, the substance of which is already given; says he bought the land for himself with an intention to let one Barnes have it, and that .he made no contract for the land in behalf of Winn. He denies lhat the contract can be so construed as to entitle Taul to an exemption from costs and damages upon the dismission of the suit between Taul and Winn, and he exhibits his power of attorney from Winn in compliance with a call in ¡he supplement.
The po«rer of attorney gives Trihide authority to transad -.11 Winn’s business in ríentucky; to sue in his name for any money due him; to defend ail suits brought against him: to pay the costs of all such suits; to execute receipts in ids name for any money due him on execution, bond, or judgment, and to demand pa rment of tne same; to prosecute ally appeal or writ of e>ro( in his name, and to release errors in any judgmem.; to make deeds to any land sold by him, and “to do all and every act that Winn could or would do, were he personally present,touching the premises aforesaid.”
The cause was tried on the bills, answers and exhibits. Tne court decreed a dissolution of the injunction, and awarded full damages and costs against the complainants; but directed that M. Taul should have credit on the executions for $1,350 50 cents, paid on the 1st of Marc'.;, 18'2h, and the like sum, paid on the 20th of Nobernber, 1816, that being ihe price of the land purchased by Tribble from said Taul, after deducting i$i 18 75 cents, the price of the twelve acres three roods and r-venly poles. The reason for which deduction is no deemed of importance to be here stated. To reverse this decree, the Tauls have prosecuted this writ of error.
The decree in respect to Benjamin J. Taul must be reversed. It appears that in June, 1820, be filed an affidavit, in the nature of a petition, praying lhat. ihe suit might be discontinued in respect to him as a co-complainant, and in which he states that his name as a complainant, had been used without his authority or knowledge, and that he was wholly ignorant of the pendency of such a suit until the latter part, of the preceding term, when he was casually informed of ü. Á rule was obtained upon this affidavit. *441 to shew cause why the suit, as to Benjamin j. Taul, should not be discontinued, but it does not appear that the rule was/wer acted on. Benjamin J. Taul did verify the allegations of the bill by oath; he released no errors; he gave no injunction bond, and the-original judgments against him had merged,in the recognizances to whichhe was no party. There was,therefore, no judgméntexisüngagainsthim. Winn had accepted the recognizances by issuing executions upon them. There was, consequently,no necessity that Benjamin J. Taul should be cither complainant or defendant in this suit. His affidavit was a sufficient disclaimer, and, connected with the other circumstances, showed that his name was used without authority. Inasmuch, then, as the defendant, Winn, was made secure by the injunction bond, we think that the co'urt erred in giving costs and damages in Winn’s favor, against Benjamin J. Taul. His affidavit and petition remaining in the cause undisposed of until the final trial, the court should then have considered the matter, and permitted lnm to discontinue the suit, so far as he was concerned, without 'paying ■costs or damages to Winn.
In respect to Micah Taul, there are two questions •raised. First, it is contended that the court'erred in giving costs and damages-against him; because, it sufficiently appears, that he had a right to injoin because of the dower of Mrs. McCrary, as set forth in the original bill. We are, however, of opinion, that it does not appear that Mrs. McCrary was entitled to. dower in the land. It -is expressly c^enied in Winn’s answer, ■and there is nothing to counteract this part of the answer, but his acknowledgment that he had purchased her'interest, whatever it might be, to secure his peace. Such an acknowledgment ought not to be regarded as ■countervailing the denial of tier right, and dispensing with the necessity of its proof. The answer is not inconsistent with itself. Taken-allogetiier, it means, that Mrs. McCrary had no right, but in order to get clear of her pretended claim, he bought his peace. This required that Taul should support Mrs. McCrary’s right, if she had any, by the proper evidences. This ■he failed to do, and, therefore, upon the ground set forth in his original bill, he did not sustain his injunclion.
>ji act done n'ldcr a pmvsr of altornoy, most bo done iu tho 'lame of the pvincipal-who ijivps tho pc>W' or, and not in tho attorney1: '¡uno.
It is contended, in the second place, that under the contract made by Tribble with Taul, that the court erred in giving costs and damages against the latter, and that the bill of Taul should have been dismissed agreed. This depends upon two points; first, whether that contract be at all obligatory on Winn; and secondly, if it is, whether it means and requires that the bill should have been so dismissed. We think that there is no clause in the power of attorney, which will admit the construction that Tribble was authorized to purchase or to accept lands for Winn in payment of debts due him. So far as the contract between Taul and Tribble binds the former to convey land to ílie labor, it must be regarded as a contract for Trib-ble’s benefit, and not for the benefit of Winn, notwithstanding the expression,that the “tracts of land have been sold to Tribble, the agent and attorney in fact of -James Winn.” In this view the addition is. but dis-m'ptiu personal. The same remark may be made as to the manner in which Tribble signedhis name. Taking file power of attorney in connexion with the addition to Ihe name of Tribble, “ as agent, &r.,” and there isnoth-ing from which the inference can be drawn, that the 'parties were endeavoring by their contract, lo enable Tribble to execute a power of attorney authorizing him to purchase lands for Winn. But as far as the •contract undertakes to bind Tribble to credit the purchase money for the land on the judgments obtained by W inn, and consents to the dismissal of the suit, there are stronger'grounds for contending that it came within the compass of Tribble’s authority, and is obligatory on Winn. We arc, however, of opinion, after viewing the whole transaction, that there is nothing in the contract between Taul and Tribbie, which can be regarded as obligatory upon Winn. The case of Parmers vs. Respass; V Monroe, 566; shows, that at law, the contract is not binding on Winn, because it was not. ■executed in his nain Nor can we regard it as a defective execution of the authority which can, or should, in this case, be cot reeled in chancery. The land pur-chared by 'Tribble was lor his use, not Winn’s. It was Tribble's business, originating in this purchase, and not Winn’s, which was the main object of the contract. Taul had an eye to the pa) ment of his debts to Winn, but he was bound to know that Tribble’s power did not. *443 ■authorize him to enter into, and involve Winn in purchases of lands. The tenor of the whole powershows, that Tribble was to settle up and close Winn's business in Kentucky, and to collect" the money due him. The power, on its face, shows that Winn was a citizen of Missouri. We think it would be a very absurd construction of the power, to suppose that Winn contemplated or intended to permit Tribble to convert all his money demands into land for Winn. It does not, we think, admit of any rational inference that Tribble attempted any such thing. We, therefore, regard the stipulation in the contract to credit the judgments, as a covenant, binding on Tribble alone, and for a breach of which,he would be responsible,and not Winn,as the land was his, and not Winn’s. Itwas an executory promise, and was no payment or satisfaction of Winn’s debt. What is said in tire contract about Tribble’s agency and power,, may have arisen from some indistinct notions of the extent of his authority, but it cannot change the nature of the transaction, which is essentially one between Taul and Tribble, and with which, Winn had no concern. The stipulation in the contract to dismiss the suit, was one of Paul’s making, and canuot deprive Winn ©f his costs or damages, unless there had been something, clearly showing that those had been relinquished. We see nothing to that effect. It is, therefore, our opinion, that the court did not err in awarding costs and damages against M. Taul. He canuot complain of the credits he has received', nor do the errors assigned, bring any thing before the court, except so much of the decree as relates to the costs and damages.
Hanson, for plaintiffs; Monro.e and Sirqmn, for defendants.
The decree is reversed, with costs, as to Benjamin J, Taul; and affirmed, as to M. Taul.